UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEHMET EMIN TATAS,

                Plaintiff,

– against –

ALI BABA'S TERRACE, INC.,
ADMIRAL INSURANCE COMPANY,
ALI RIZA DOGAN, SENOL BAKIR,
*and* TOLGAHAN SUBAKAN,

                Defendants.

**OPINION & ORDER**

19 Civ. 10595 (ER)

RAMOS, D.J.:

    Mehmet Tatas, proceeding *pro se*, sues the defendants for damages arising from discriminatory conduct and a hostile work environment at his former employer, the restaurant Ali Bara's Terrace, Inc. He sues the restaurant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* for discrimination based on his race and national origin, as well as retaliation for reporting the alleged conduct. He sues all defendants for discrimination under 42 U.S.C. § 1981 and New York State and City statutory law. Finally, he sues the owner of Ali Baba's, Ali Riza Dogan, under New York common law for assaulting him in February and May 2016.

    The defendants now move to dismiss some of the claims. Specifically, Ali Baba's moves to dismiss the Title VII counts alleged against it because Tatas failed to exhaust his administrative remedies, Dogan moves to dismiss the counts based upon two separate assaults that occurred in February 2016 as time-barred,[1] and the restaurant's insurer, Admiral Insurance Co., moves to dismiss all counts alleged against it for failure to state a claim. For the following reasons, the motions of Dogan and Admiral are GRANTED.

---

[1] Dogan does not move to dismiss a third assault alleged against him that occurred in May 2016.

The motion to dismiss by Ali Baba's is DENIED — the restaurant will have an opportunity to press its affirmative defense to the Title VII claims after discovery.

I.     TATAS' ALLEGATIONS

The following allegations are drawn from two separate Complaints:  the "2017 Complaint" filed on May 16, 2017 in New York Supreme Court against Dogan, Notice of Removal Ex. B, Doc. 1, and the "2019 Complaint" filed on September 18, 2019 also in New York Supreme Court, Notice of Removal Ex. A.  The Court consolidated these two Complaints into one action on the defendants' motion in December 2019.  Doc. 21.

Tatas, a Kurdish man from Turkey, began to work for Ali Baba's in November of 2011.  2019 Compl. ¶ 7.  His employment continued without incident until early 2016, when he told defendant Tolgahan Subakan — his coworker and then-roommate — about his Kurdish background.  2019 Compl. ¶ 17.  Subakan told defendant Senol Bakir, another coworker, about Tatas' Kurdish ancestry shortly thereafter.  2019 Compl. ¶ 17.

According to Tatas, Subuakan and Bakir began calling him a terrorist and a member of the Kurdish Workers Party or "PKK," a political and paramilitary organization based in the Kurdish regions of Turkey and Iraq.  2019 Compl. ¶ 18.  Even though Tatas immediately told Dogan, the owner of the restaurant, of the harassment, the two co-workers continued, and, rather than stop the harassment, Dogan allegedly began to participate, as well.  2019 Compl. ¶ 18.  Tatas alleges that Dogan called him a terrorist in part because Tatas' son refused to join the Turkish armed forces.  2019 Compl. ¶ 22.

On February 16, 2016, Bakir allegedly told Tatas that Tatas was a terrorist and an insult to Turkey.  2019 Compl. ¶ 23.  Bakir threatened to attack Tatas, but he was restrained by other employees of the restaurant.  2019 Compl. ¶ 23.  Tatas told Dogan of this incident, but Dogan allegedly refused to take action against Bakir, instead telling Tatas that he should quit the restaurant.  2019 Compl. ¶ 24.  Tatas alleges that Dogan hit and injured him that same day.  2017 Compl. at ECF p. 8.

The next day, Dogan allegedly told Tatas that he had been questioned by Turkish law enforcement at the Turkish embassy regarding any relationship between the PKK and Tatas.  2019 Compl. ¶ 25.  Dogan also told Tatas that Turkish officials were looking for Tatas.  2019 Compl. ¶ 25.  Dogan ordered Tatas to remove all of his posts on Facebook, because Dogan did not want Ali Baba's to be associated with the PKK.  2019 Compl. ¶ 26.  Tatas alleges that these statements were lies meant to cause him emotional distress and that he never had posts mentioning the PKK on his Facebook profile.  2019 Compl. ¶ 25.  Tatas claims that Dogan hit him again that day.  2017 Compl. at ECF p. 8.

About three months after these incidents, on May 17, 2016, Tatas had a melanoma removed from his face.  2019 Compl. ¶ 27.  He wore a prominent bandage on his face while it healed.  2019 Compl. ¶ 28.  When Tatas returned to work the next day, May 18, Dogan allegedly yelled at him, claiming that Tatas' bandage might scare customers.  2019 Compl. ¶ 28.  On May 19, Dogan told Tatas to leave work and not return until his face healed.  2019 Compl. ¶ 29.

A week and a half later, on May 27, 2016, Dogan fired Tatas and allegedly kicked him three times.  2019 Compl. ¶ 30; 2017 Compl. at ECF p. 8.  Although Tatas called 911 immediately and gave an initial report to police, he claims the police never investigated.  2017 Compl. at ECF pp. 8–9.  After he was allegedly assaulted, Tatas went to a physician for treatment.  2017 Compl. at ECF p. 9.

## II.   PROCEDURAL HISTORY

According to a letter sent to the Court on December 10, 2019, Tatas filed an administrative complaint against Ali Baba's soon after he was fired in May 2016.  Doc. 15.  Specifically, Tatas advised that on June 30, 2016, he filed the complaint with the New York City Commission on Human Rights ("CCHR") that was automatically dually filed with the U.S. Equal Employment Opportunity Commission ("EEOC").   That complaint was dismissed by the CCHR for administrative convenience; Tatas received a right-to-sue letter from the CCHR on September 20, 2017.  Although Tatas initially attempted to

3

appeal the dismissal, he withdrew the appeal in December 2017. Tatas was represented by an attorney from the time he filed the complaint in June 2016 to when he fired his attorney in April 2018. Krebs Decl. ¶ 4.

On May 16, 2017 — about a year after he filed his charge with the CCHR and the EEOC, but before he received the CCHR's right-to-sue letter — Tatas filed his first lawsuit in New York Supreme Court alleging the February and May 2016 assaults by Dogan.[2] Tatas filed his second lawsuit in New York Supreme Court over two years later, on September 18, 2019. Before any action occurred in that second case, the defendants removed both the 2017 and 2019 lawsuits to this Court in November 2019. Doc. 1.

In his December letter to the Court, Tatas claims that he never received any correspondence from the EEOC regarding his case, despite dually filing his administrative complaint with it in June 2016. Doc. 15. His attorney, immediately before being fired by Tatas, wrote a letter to the EEOC on April 2, 2018, requesting a right-to-sue letter. Tatas claims that neither he nor his attorney received any response. On December 5, 2019, in preparation for a pre-motion conference in front of this Court, Tatas contacted the EEOC by phone. An EEOC representative told him that it had sent a right-to-sue letter to Tatas on or about May 24, 2019, but, in his December 2019 letter to the Court, Tatas claims he never received that document. He has since acquired a copy of that letter, which he provided to the defendants. *See* Krebs Decl. Ex. B.

### III.   APPLICABLE LAW

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Chrisite's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court is not required,

---

[2] The parties do not indicate any action occurred in that case other than a stay due to a bankruptcy by Ali Baba's, which began in July 2019 and ended in October 2019.

however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Even though "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination" to survive a motion to dismiss, "it must at a minimum assert nonconclusory factual matter sufficient to 'nudge its claims' across the line from conceivable to plausible.'" *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680) (internal alternations omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Courts should read *pro se* pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks omitted) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).  The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)).  "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

IV.   CLAIMS AGAINST ADMIRAL

Tatas fails to state a claim for employment discrimination against Admiral, Ali Baba's insurer.  As just discussed, it is Tatas' responsibility to plead facts regarding Admiral's involvement in his injuries sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Nowhere in either of his Complaints, however, does Tatas allege that Admiral actually *did* anything, other than be the insurer of Ali Baba's.

5

Tatas may not attempt to hold Admiral liable for the actions of Ali Baba's or its employees as their insurer, either.  Under the common law of New York, "an injured person possesse[s] no cause of action against the insurer" of someone who injures him. *Commonwealth Land Title Ins. Co. v. Am. Signature Services, Inc.*, No. 13 Civ. 3266 (JFB) (WDW), 2014 WL 672926, at *4 (E.D.N.Y. Feb. 20, 2014) (quoting *Lang v. Hanover Insurance Co.*, 820 N.E.2d 855, 857 (2004)).  And the statute that grants such a cause of action, New York Insurance Law § 3420, only allows one to be maintained if the plaintiff first obtains a judgment against the person who injured him, serves the insurance company with a copy of the judgment, and waits 30 days for payment.  *Id.*, at *4 (quoting *Lang*, 820 N.E.2d at 858).  Tatas has not satisfied any of these conditions, and so has no cause of action against Admiral.  *See Zyburo v. Cont. Cas. Co.*, 60 F. Supp. 3d 531, 535 (S.D.N.Y. 2014) (dismissing action against insurer at the motion to dismiss stage for failure to obtain judgment against the insured).  Nor has he identified any provision in the insurance policy between Admiral and Ali Baba's that would give him such a cause of action.

Tatas' one argument to the contrary is without merit.  He argues that Admiral is an "unauthorized company in New York State," thereby leaving the question of Admiral's liability disputed.  Doc. 29 at 10.  But, even if Admiral were without authorization to do business in New York (and Admiral indicates that it is via licensed wholesale brokers), New York law would still apply to the question of whether a policy issued to a New York company would cover injuries arising from events taking place in New York.  *See Olin Corp. v. Insu. Co. of N. Am.*, 743 F. Supp. 1044, 1048 (S.D.N.Y. 1990), *aff'd*, 972 F.2d 1328 (2d Cir. 1992).

Accordingly, Tatas' has no right to sue Admiral at this time.  *See Tillman v. Fireman's Fund Ins. Co.*, 590 F. Supp. 246, 249 (S.D.N.Y. 1984) ("[O]nly if there is statutory or policy language to the contrary does a third-party have the right to sue the insurer directly.").  All claims against Admiral are dismissed without prejudice to Tatas

refiling if he obtains a judgment against Ali Baba's and otherwise follows the requirements of New York Insurance Law § 3420.

## V.  FEBRUARY ASSAULT CLAIMS

In New York, claims of assault have a statute of limitations of one year.  N.Y. C.P.L.R. §215 (3).  Lawsuits alleging intentional infliction of emotional distress must be brought within a year, as well.  *See, e.g.*, *Teller v. Galak*, 80 N.Y.S.3d 106 (N.Y. App. Div. 2d Dept. 2018).  These statutes of limitations are shorter than the general statute of limitations for personal injury under New York Law.  *See* N.Y. C.P.L.R. § 214(5) (setting three-year statute of limitations for "an action to recover damages for a personal injury *except as provided in section[] . . . 215*." (emphasis added)).

In his 2017 Complaint, Tatas alleges that Dogan hit him on three occasions:  twice in February 2016 and once in May 2016.  As the 2017 Complaint alleging these assaults was filed in May 2017, more than a year after the February assaults, claims based on the February assaults must be dismissed.  The assault alleged to have occurred on May 27, 2016 in a complaint filed on May 16, 2017, is timely.

Tatas' request to toll the statute of limitations to save the February 2016 assault claim is denied.  "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances."  *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  As Tatas has failed to identify any circumstance preventing him from alleging the February 2016 assaults, the Court declines to equitably toll this deadline.  *See Jennings v. Municipality of Suffolk County*, No. 11 Civ. 911 (JFB) (ARL), 2013 WL 587892, at *9 (E.D.N.Y. Feb. 13, 2013) (declining to equitably toll on a motion to dismiss due to failure of *pro se* plaintiff to provide proper grounds to justify tolling).

7

Accordingly, any claims arising from the alleged February 2016 assaults are dismissed with prejudice as time-barred. As the alleged May 2016 claim was timely filed, that claim survives.

## VI. TITLE VII CLAIMS

Ali Baba's moves to dismiss Tatas' Title VII counts on the grounds that he did not timely file his lawsuit. Because the defense it raises is an affirmative defense — not a pleading requirement — the Court denies its motion at this time.

Plaintiffs generally must file their lawsuit within 90 days of receiving a right-to-sue letter form the EEOC. *See Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (citing 42 U.S.C. § 2000e–5(f)(1)). Tatas does not mention receiving a right-to-sue letter anywhere in his 2019 Complaint. But Ali Baba's did provide a copy of a right-to-sue letter addressed to Tatas dated May 24, 2019 — that is, nearly 120 days before Tatas filed his 2019 Complaint in New York Supreme Court on September 18. Tatas, however, claims he was not aware of the letter until after he filed the lawsuit and it was removed to this Court.

In the Second Circuit, failure to exhaust administrative remedies and to timely file a lawsuit after administrative dismissal is an affirmative defense; administrative exhaustion is not a jurisdictional pleading requirement. *See Hardaway v. Hartford Pub. Works Dept.*, 879 F.3d 486, 491 (2d Cir. 2018) ("[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense."). Accordingly, failure to administratively exhaust a claim may be overcome through waiver, estoppel, or equitable tolling. *Id.* (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

Although "[a]ffirmative defenses may be considered on a motion to dismiss where the defense appears on the face of the pleading and the documents incorporated therein," *Ashmeade v. Citizens Bank*, No. 17 Civ. 8994 (JGK), 2018 WL 3093963, at *6 (S.D.N.Y. June 22, 2018) (internal quotation removed), the Court does not find that the restaurant's

defense appears in Tatas' complaints.  Tatas' pleadings do not contain any mention of the administrative proceedings before the EEOC, and so it is impossible to decide the issue of whether Tatas has an equitable defense to exhaustion at this time.  *Compare id.* (declining to dismiss Title VII complaint on exhaustion grounds even though *pro se* plaintiff made arguments concerning equitable tolling) *with Ziyan Shi v. N.Y. Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 339–43 (S.D.N.Y. 2019) (dismissing on summary judgment a Title VII claims based on failure to exhaust, after the benefit of discovery).  *See also Hardaway*, 879 F.3d at 491 (reversing district court for dismissing on exhaustion grounds when EEOC proceedings were not mentioned in the plaintiff's complaint).

The decision by the Second Circuit in *Holowecki v. Fed. Express Corp.* — decided 12 years before *Hardaway* — is not to the contrary.  440 F.3d 558, 565 (2d Cir. 2006). There, the court held that it could properly consider EEOC filings and declarations not attached to the complaint because the plaintiffs relied on the documents to satisfy a time limit required by the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq. Id.*  In doing so, the court cited the general rule that, when deciding a motion to dismiss, a court may consider a document not attached to the complaint or incorporated by reference if the complaint "solely relies" upon it or if the document is "integral to the complaint."  *Id.* (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  In contrast to the documents at issue in *Holowecki*, the May 2019 right-to-sue letter is not integral to Tatas' 2019 Complaint; Tatas does not address his administrative efforts at all, as is his option.  *See Hardaway*, 879 F.3d at 491.

Finally, the Court notes that denying the motion to dismiss the Title VII counts will cause the defendants little prejudice.  Ali Baba's did not move to dismiss the May 2017 assault claim or the discrimination claims based upon 42 U.S.C. § 1981 and New York law, all of which cover the same time period and events as the Title VII counts. Aside from what is likely to be a limited investigation into the circumstances surrounding

the timing of Tatas' receipt of the May 2019 right-to-sue letter, the scope of discovery will not change.

Therefore, the Court denies Ali Baba's motion to dismiss the Title VII discrimination and retaliation counts. The Court will be properly situated to consider the affirmative defense raised by the restaurant on a motion for summary judgment.

## VII. CONCLUSION

For these foregoing reasons, the Court makes the following rulings:

- Admiral Insurance Company's motion to dismiss is GRANTED in its entirety. Although this dismissal is without prejudice, any amended complaint would be futile given that Tatas has yet to obtain a judgment against any of Admiral's insureds.
- Dogan's motion to dismiss the February 2016 assaults claim is GRANTED. As Tatas has not suggested there are any facts that could save these claims, this dismissal is with prejudice. Tatas may not file an amended complaint for these claims.
- The motion of Ali Baba's Terrace to dismiss the Title VII counts is DENIED.

The parties — other than Admiral — are directed to appear for a status teleconference on May 27, 2020 at 10:30 a.m. The parties are directed to call (877) 411–9748 and enter access code 302 9857. The Clerk of Court is respectfully directed to terminate Admiral Insurance from this action and to terminate the motions, Docs. 22 and 25.

It is SO ORDERED.

Dated:   April 29, 2020
         New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.