**MEMO ENDORSED**

Representing Management Exclusively in Workplace Law and Related Litigation

**jackson|lewis**

Jackson Lewis P.C.
58 South Service Road
Suite 250
Melville NY 11747
Tel 631-247-0404
Fax 631-247-0417
www.jacksonlewis.com

| | | | |
|---|---|---|---|
| ALBANY, NY | DETROIT, MI | MILWAUKEE, WI | PROVIDENCE, RI |
| ALBUQUERQUE, NM | GRAND RAPIDS, MI | MINNEAPOLIS, MN | RALEIGH, NC |
| ATLANTA, GA | GREENVILLE, SC | MONMOUTH COUNTY, NJ | RAPID CITY, SD |
| AUSTIN, TX | HARTFORD, CT | NEW ORLEANS, LA | RICHMOND, VA |
| BALTIMORE, MD | HONOLULU, HI* | NEW YORK, NY | SACRAMENTO, CA |
| BERKELEY HEIGHTS, NJ | HOUSTON, TX | NORFOLK, VA | SALT LAKE CITY, UT |
| BIRMINGHAM, AL | INDIANAPOLIS, IN | OMAHA, NE | SAN DIEGO, CA |
| BOSTON, MA | JACKSONVILLE, FL | ORANGE COUNTY, CA | SAN FRANCISCO, CA |
| CHARLOTTE, NC | KANSAS CITY REGION | ORLANDO, FL | SAN JUAN, PR |
| CHICAGO, IL | LAS VEGAS, NV | PHILADELPHIA, PA | SEATTLE, WA |
| CINCINNATI, OH | LONG ISLAND, NY | PHOENIX, AZ | SILICON VALLEY, CA |
| CLEVELAND, OH | LOS ANGELES, CA | PITTSBURGH, PA | ST. LOUIS, MO |
| DALLAS, TX | MADISON, WI | PORTLAND, OR | TAMPA, FL |
| DAYTON, OH | MEMPHIS, TN | PORTSMOUTH, NH | WASHINGTON DC REGION |
| DENVER, CO | MIAMI, FL | | WHITE PLAINS, NY |

*through an affiliation with Jackson Lewis P.C., a Law Corporation

MY DIRECT DIAL IS:  631-247-4670
MY EMAIL ADDRESS IS:  DIANE.KREBS@JACKSONLEWIS.COM

October 8, 2020

**VIA ECF**
The Honorable Edgardo Ramos
U.S. District Judge
United States District Court
Southern District of New York
40 Foley Square, Courtroom 619
New York, NY 10007

           Re:    *Mehmet Emin Tatas v. Ali Baba's Terrace, Inc. and Ali Riza Dogan*
                  Case No. 1:19-cv-10595-ER

Dear Judge Ramos:

    We represent, *inter alia*, Defendants Ali Baba's Terrace, Inc. ("ABT") and Ali Riza Dogan ("Dogan") (collectively, "Defendants") in this matter. We are responding to *pro se* Plaintiff's letter to the Court dated October 5, 2020. As more fully detailed below, Defendants (1) previously corrected the misidentification of the Turkish Minister of Foreign Affairs as the Turkish Prime Minister; (2) provided the appropriate witness list for incidents arising out of the Turkish Minister of Foreign Affairs' visit; (3) provided the appropriate witness list for *pro se* Plaintiff's assault of Dogan; and (4) actively responded to *pro se* Plaintiff regarding his alleged discovery issues, as demonstrated by supporting correspondence.

### I. There is No Discrepancy or Impropriety in Defendants' Correction of the Turkish Official Involved in an Incident Relevant to the Case

    *Pro se* Plaintiff correctly claims Defendants originally asserted it was the "Turkish Prime Minister" who Plaintiff yelled at and refused to serve when the official visited the restaurant, but later changed it to the Turkish Minister of Foreign Affairs. During the course of the litigation, Defendants realized they had identified the wrong Turkish official, and therefore Defendants made this correction in their discovery responses. Defendants included in their response to *pro se* Plaintiff's Discovery Request No. 18, "… it was the Minister of Foreign Affairs, Melvut Cavusglu, who dined at the Restaurant and not the Prime Minister." See <u>Exhibit A</u>. In addition to this



response, Defendants made *pro se* Plaintiff aware, in a string of emails on August 6, 2020, that they were correcting this information.  See <u>Exhibit B</u>.  While Defendants wish they had not made the error in the first place, Dogan is only human, and mistakes sometimes happen.  Once they realized they had erred, they were compelled to correct their responses with the true information.  Plaintiff's demand that Defendants retract their corrected response is simply ludicrous.

**II.     <u>The Witness Lists Raise No Discovery Concerns</u>**

*Pro se* Plaintiff also claims that two of Defendants' witness lists in their discovery responses differ from those submitted to the New York City Commission on Human Rights ("NYCCHR") – the list of witnesses for the Turkish Minister of Foreign Affairs' visit to ABT, and that for *pro se* Plaintiff's assault of Dogan.  This statement is true, but with good reason:  the wording of the respective requests differed, thus requiring a different response.

**A.     *Turkish Minister of Foreign Affairs Witness List***

Defendants' witness list to the NYCCHR included individuals (employees and customers) who were "present" for the relevant visit from the Turkish Minister of Foreign Affairs, which included those who "witnessed" the incident.  See <u>Exhibit C</u>.[1]  However, in *pro se* Plaintiff's discovery requests, he requested Defendants "[i]dentify each and every employees [sic] of ABT restaurant who ***witnessed*** plaintiff allegedly refused [sic] to serve Turkish prime minister …" *See* <u>Exhibit A</u> (emphasis added).  In other words, *pro se* Plaintiff only requested the identity of employees who witnessed the incident, not those who were present at ABT at the time.  Thus, the individuals Defendants identified in their discovery responses are those who they believe *actually witnessed* the incident, based on their best recollection, rather than including those who were merely *present* at ABT at the time of the incident.  Defendants also added names to that list that, based on their recollection, they believe witnessed the incident but were inadvertently omitted from the list submitted to the NYCCHR.  Again, Dogan is only human, and he therefore must respond the best that he can at the time of the response.[2]

**B.     *Witness List Regarding Plaintiff's Assault on Dogan***

Similar to above, Defendants' witness list to the NYCCHR included individuals who were "present" for the incident in which *pro se* Plaintiff yelled and kicked Dogan on or about May 27, 2016.  *See* <u>Exhibit D</u>.  However, *pro se* Plaintiff requested Defendants "[i]dentify each and every employees [sic] of Ali Baba s [sic] Terrace Restaurant who allegedly got hit by plaintiff as a [sic] third counterclaims fraud and assault in paragraph 12 that plaintiff hit them."  *See* <u>Exhibit E</u>.  This

---

[1]     Although the response indicates it lists those who "were present and witnessed" the incident, Defendants at that time interpreted the word "and" to also mean the word "or" to be more inclusive – much like this Court does for its uniform definitions.  *See* Local Civil Rule 26.3(d)(2).

[2]     In any event, for both witness lists raised by Plaintiff, any exclusions from the discovery responses in court are clearly not prejudicial, as Plaintiff has demonstrated he already has the documents from the NYCCHR proceedings and is accordingly able to contact any of the witnesses on those lists to see if they have relevant information to aid in the prosecution of his case.



discovery request differs greatly from the request in the NYCCHR document; indeed, Plaintiff did not even ask Defendants to identify who witnessed Plaintiff's assault on Dogan, but rather merely who was hit by Plaintiff. Accordingly, Defendants responded to that request and then voluntarily provided supplemental information in their response regarding who actually witnessed the incident (as opposed to being present in the restaurant at that time). *See* <u>Exhibit E</u>. There is thus no discrepancy and no discovery issue.

### III. Defendants' Counsel Responded Appropriately to *Pro Se* Plaintiff's Correspondence, But Plaintiff Failed to Follow This Court's Rules

As provided in Rule 2(A)(i) of Your Honor's Individual Practice Rules, a party must adhere to Fed. R. Civ. P. 37(a)(1), including requesting a meet and confer, before bringing a discovery dispute to the Court's attention. Here, no such effort by *pro se* Plaintiff occurred. Instead, *pro se* Plaintiff made outright threats to Defendants' counsel, demanding answers to vague requests via email. *See* <u>Exhibit B</u> ("You and your clients are still doing wrong you can not lie at discovery because you are under oath" and "No problem mrs Krebs I will report these documents to the court") (all errors in original). Thus, Defendants were surprised to receive this letter requesting judicial intervention on October 5, 2020.

Further, contrary to *pro se* Plaintiff's allegations, Defendants' counsel engaged in ongoing correspondence with him. In fact, his contact with Defendants' counsel was inappropriate, unprofessional and demeaning, yet we continued the conversation to the best of our ability. In doing so, we attempted to explain the correction made within our discovery responses regarding the Turkish Minister of Foreign Affairs. Further, we discussed the repercussions and risks of *pro se* Plaintiff's continuous defaming statements and threats towards Defendants' counsel. *See* <u>Exhibit B</u>.

Plaintiff did not raise the witness list issues in these earlier emails. He first raised them in an email sent at about 7 pm on August 10, 2020. *See* <u>Exhibit F</u>. At that time, however, the dialogue was put on pause due to potential mediation. On August 4, 2020, the parties were notified of a mediator assignment, and before Defendants responded to Plaintiff's August 10 email, a planning call took place on August 12, 2020. During discussions with *pro se* Plaintiff's limited counsel for settlement and mediation purposes, the parties decided to put a hold on discovery in order to focus all attention on mediation and not expend potential settlement money on active litigation. Indeed, Plaintiff agreed to this, which was the basis for the August 28, 2020 application to Your Honor for an extension of the discovery deadline (which was granted). Thus, Defendants' counsel provided adequate attention towards *pro se* Plaintiff's concerns and certainly would have engaged in a meet and confer to discuss open matters before rushing to this Court.

### IV. Conclusion

In sum, Defendants have done nothing more than satisfy their discovery obligations at the various forums in which these issues were explored, including making corrections when errors were identified. Moreover, *pro se* Plaintiff has access to all the information he requested and thus Defendants' actions did not result in any prejudice. While we recognize that Plaintiff is acting *pro*



*se* and thus may not fully understand or appreciate the substantive and procedural requirements of this litigation, his constant knee-jerk reaction to accuse defense counsel and Defendants of improprieties is growing tiresome, especially when he chooses to ignore our legitimate explanations. Should *pro se* Plaintiff continue to ignore his obligations in this regard, Defendants will seek sanctions, including the cost of having to respond to his unwarranted and repeated accusations.

We appreciate Your Honor's assistance with this matter and are willing to discuss any issues in more detail if need be.

Respectfully submitted,

JACKSON LEWIS P.C.

*Diane Krebs*

Diane Krebs, Esq.

cc: Plaintiff Mehmet Emin Tatas
Heather L. Hulkower, Esq.

4826-2606-0238, v. 1

---

The Court will hold a discovery teleconference in this matter on October 23, 2020, at 11:30 a.m. The parties are directed to dial (877) 411-9748 and enter access code 302 9857# at that time.

_____
Edgardo Ramos, U.S.D.J
Dated: Oct. 8, 2020
New York, New York