UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEHMET EMIN TATAS,<br><br>    *Plaintiff*,<br><br>    v.<br><br>ALI BABA'S TERRACE, INC., ALI RIZA DOGAN, SENOL BAKIR, and TOLGAHAN SUBAKAN,<br><br>    *Defendants*. | Case No. 1:19-cv-10595-ER<br><br>Hon. Edgardo Ramos |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE RECORDINGS PRODUCED BY PLAINTIFF,
<u>AS WELL AS EXHIBITS DERIVED FROM THOSE RECORDINGS</u>**

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ........................................................................................................1
ARGUMENT .................................................................................................................................2
I.   PLAINTIFF HAS NOT SPOLIATED EVIDENCE..............................................................2
   A.   PLAINTIFF HAS PRODUCED EVERY AUDIO RECORDING ...................................2
   B.   PLAINTIFF'S AUDIO RECORDINGS WERE NOT ALTERED ...................................4
II.  EVEN IF EVIDENCE WAS SOMEHOW SPOLIATED, DEFENDANTS FAIL TO SHOW HOW IT IS EITHER RELEVANT OR PREJUDICIAL ......................................................5
III. THE AUDIO RECORDINGS CAN BE PROPERLY AUTHENTICATED .......................8
IV.  THE AUDIO RECORDINGS SATISFY THE BEST EVIDENCE RULE........................10
CONCLUSION..............................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018),
    *on reconsideration in part*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019) .......................................... 4

*Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*,
    783 F. Supp. 2d 736 (S.D.N.Y. 2011) ........................................................................... 6

*GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*,
    282 F.R.D. 346 (S.D.N.Y. 2012), *aff'd*, 2012 WL 1849101
    (S.D.N.Y. May 21, 2012) ........................................................................................ 8

*Hurt v. City of New York*,
    2019 WL 5781990 (S.D.N.Y. Nov. 6, 2019) ................................................................. 8

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    341 F.R.D. 474 (S.D.N.Y. 2022) ............................................................................ 2, 6

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998) ...................................................................................... 6

*La Belle v. Barclays Cap. Inc.*,
    340 F.R.D. 74 (S.D.N.Y. 2022) .................................................................................. 6

*Loc. 3621, EMS Officers Union, DD-37, AFSCME, AFL-CIO v. City of New York*,
    2021 WL 134566 (S.D.N.Y. Jan. 14, 2021) .................................................................. 7

*Mathias v. Jacobs*,
    197 F.R.D. 29 (S.D.N.Y. 2000), *vacated*, 167 F. Supp. 2d 606 (S.D.N.Y.
    2001) ................................................................................................................... 8

*McLaurin v. New Rochelle Police Officers*,
    439 F. App'x 38 (2d Cir. 2011) .................................................................................. 9

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ...................................................................................... 7

*Moody v. CSX Transp., Inc.*,
    271 F. Supp. 3d 410 (W.D.N.Y. 2017) ..................................................................... 3, 6

*Oleg Cassini, Inc. v. Electrolux Home Prods., Inc.*,
    2013 WL 3056805 (S.D.N.Y. June 19, 2013) ............................................................... 7

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,
   262 F. Supp. 2d 251 (S.D.N.Y. 2003), *amended on reconsideration in part*,
   2012 WL 2354458 (S.D.N.Y. June 20, 2012) ............................................................. 8, 9, 10

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
   306 F.3d 99 (2d Cir. 2002) ................................................................................................. 6

*Ricketts v. City of Hartford*,
   74 F.3d 1397 (2d Cir. 1996), *as amended on reh'g in part* (Feb. 14, 1996) ..................... 9

S.E.C. v. Badian,
   822 F. Supp. 2d at 364 ....................................................................................................... 9

*Senior v. Eihab Human Servs.*,
   2023 U.S. Dist. LEXIS 78294 (E.D.N.Y. May 4, 2023) .................................................... 5

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ...................................................................................... 10

## Rules & Regulations

Fed. R. Civ. P. 37(b) ................................................................................................................... 7

Fed. R. Civ. P. 37(e) ............................................................................................................... 7, 10

Fed. R. Evid. 1001(d) ................................................................................................................ 10

Fed. R. Evid. 1003 .................................................................................................................... 11

## Other Authorities

2 John H. Wigmore, *Evidence in Trials at Common Law* § 291 ............................................... 6

Plaintiff Mehmet Emin Tatas respectfully submits this memorandum of law in opposition to Defendants' motion *in limine* seeking to exclude the admission of recordings produced by Plaintiff, as well as exhibits derived from those recordings. Dkt. 181, 195.

## **PRELIMINARY STATEMENT**

As an initial matter, Plaintiff attaches a declaration to this opposition—submitted under penalty of perjury—refuting Defendants' allegations that he either destroyed or edited audio recordings. That alone should be a sufficient basis to deny Defendants' motion. But even if not, consideration of the motion's shortcomings reaches the same result. Defendants provide no examples of potentially destroyed recordings. Defendants provide no examples of potentially altered recordings. Defendants provide no expert opinion suggesting alterations. Defendants provide no instances of requesting an expert opinion or "forensic examination" of potential alterations. Defendant Dogan does not provide a sworn statement refuting his presence, voice, or statements in the recordings. Defendants' translators provide no instances where audio was missing context. Defendants provide no ways in which the existence of hypothetically destroyed recordings would benefit them at trial. And Defendants provide no justification for why this spoliation argument is being raised for the first time nearly a decade into this litigation.

Despite all these shortcomings, Defendants append two more objections to the end of their motion, alleging that the audio recordings cannot be authenticated and violate the best evidence rule. These arguments similarly fail. Defendants base the entire crux of their analysis on the criminal standard for authenticity, which civil cases in this District have utterly refuted. Relying on that improper analysis, Defendants then fail to show how the recordings can be admitted as either duplicates or originals. In sum, Defendants' motion is nothing more than a transparent attempt to exclude evidence harmful to their defense. The motion should be denied in its entirety.

1

**ARGUMENT**

I.  **PLAINTIFF HAS NOT SPOLIATED EVIDENCE**

Defendants' spoliation argument amounts to nothing more than a desperate, eleventh-hour attempt to exclude evidence that is damning to their defense. Defendants suggest that there are two ways in which Plaintiff spoliated evidence: (1) Plaintiff allegedly had other audio recordings that he did not produce; and (2) Plaintiff allegedly altered the audio recordings that he did produce.[1] However, contrary to Defendants' conclusory statements and attempts to misconstrue the discovery record, Plaintiff simply and directly denies those allegations by appending a declaration to this opposition, submitted under penalty of perjury, stating that: (1) he produced all audio recordings that he made; and (2) he did not alter any audio recordings he produced. Ex. 5 (Declaration of Mehmet Emin Tatas). Even beyond that declaration, Plaintiff refutes Defendants' allegations as follows.

A.  **PLAINTIFF HAS PRODUCED EVERY AUDIO RECORDING**

Nowhere in their motion do Defendants point to an audio recording that they believe existed but has not been produced. This alone is sufficient to deny their motion. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 493-95 (S.D.N.Y. 2022) ("For spoliation sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence <u>actually existed and was destroyed</u>. … The moving party must come forward with plausible, concrete suggestions as to what the destroyed evidence might have been.") (emphasis in original; citations, internal quotations, and brackets omitted).

---

[1] Plaintiff intends to testify at trial and should the Court permit, Defendants will have the opportunity to *voir dire* Plaintiff on any alleged "spoliation" prior to admitting the recordings, and any exhibits derived from them, into evidence.

2

To obscure this deficiency, Defendants attempt to mislead the Court by selectively quoting Plaintiff's discovery response to improperly suggest that audio recordings were destroyed. In their Requests for Admission, Defendants vaguely ask Plaintiff to admit or deny that he has "any recording" which he did not produce. Mot. 6 (citing Anci Decl. Ex. D210 at 13). Noticeably missing from Defendants' motion is the following portion of that answer where Plaintiff denies the exact allegation that Defendants propound now:

> [P]laintiff admit that he already produced recording he *has/had* possession Plaintiff he *have / had* three audio recording with defendants and one with his former co-worker Yasemin Gul which already has been produced to defendants so *he does not have more audio recording than these 4 audio recording*.

Ex. 6 at 24-25 ¶ 52 (emphasis added).

Defendants similarly misconstrue the entire crux of a spoliation analysis. The relevant inquiry is whether *evidence* has been destroyed, not whether the device upon which that evidence previously resided has been destroyed. *See, e.g., Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 425-26 (W.D.N.Y. 2017) ("[T]he electronic information stored within the laptop is the relevant evidence. Had defendants lost or destroyed the contents of the laptop but preserved the physical hardware, [the party arguing for spoliation] would be in precisely the same position as she is now. It is the loss of the electronic evidence stored on the laptop that gives rise to this dispute."). As stated above, Defendants do not suggest that any *evidence* has actually been destroyed. Thus, similar to how the physical laptop in *Moody* was inconsequential as long as the electronic contents of the laptop were preserved, the destruction of Plaintiff's cellular device is of no consequence precisely because the audio recordings were preserved. Defendants' argument to the contrary—that the audio recordings "were not preserved" (Mot. 3)—is nonsensical when they

3

have been retained and produced. Resultingly, Plaintiff's custom of upgrading his phone every year is nothing more than a red herring.[2]

## B.   PLAINTIFF'S AUDIO RECORDINGS WERE NOT ALTERED

Defendants' motion is saturated with conclusory statements that Plaintiff's audio recordings are somehow "edited," "altered," or "manicured." Mot. 1, 5-7, 9. However, Defendants' overreliance on conjecture only highlights what is substantively missing: any specific evidence that an audio recording appears to have been changed.[3]

*First*, despite Mr. Dogan's presence on all but one of the audio recordings, Defendants do not submit any type of sworn statement from Mr. Dogan questioning the reliability of the audio recordings. Mr. Dogan could have easily submitted an affidavit swearing that: (1) the voice in the audio is not his; (2) the conversations never occurred; (3) the conversations are missing context; (4) the conversations occurred on different dates; or any of other numerous possibilities. Defendants did not submit any sworn statement from Mr. Dogan because the audio recordings are only harmful, not manufactured.

*Second*, Defendants do not submit any expert opinion suggesting that the audio recordings were altered. Defendants claim that they were deprived of the opportunity to conduct a "forensic

---

[2]   Plaintiff upgraded his phone based on a belief that it was slowing down; similar allegations have been the subject of litigation. *See In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 440 (N.D. Cal. 2018) ("Beginning in late 2015, consumers began reporting that their iPhone and iPad devices were experiencing unexpected shutdowns despite showing more than 30% remaining charge on the battery. When the device shut down, it would remain dead until the user reconnected the device to power. The number of complaints increased through the fall of 2016."), *on reconsideration in part*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019) (internal citations omitted).

[3]   In fact, Plaintiff specifically informed Defendants that he did not alter the audio recordings in his Responses to Defendants' Interrogatories: "[A]ll this items are complete copies of entire recording as originally made, with no missing or cut-off parts, and that they have not been edited in any way." Dkt. 99-3 at 311-312 ¶ 76.

4

examination" of the "original" audio recordings, Mot. 3, yet never once state that they have attempted to conduct such an examination of the produced audio recordings in the nearly eight years of this litigation.[4] Defendants have the audio files to examine, and Defendants do not suggest that the file format is preventing this examination. If Defendants truly believed that the audio recordings had been altered, they would have already conducted a "forensic examination" of those files, rather than simply conjecturing in this motion.

*Third*, Defendants' translations of the audio recordings never suggest that they are missing context. Not once in Defendants' translations does the translator write or otherwise indicate that there appeared to be missing portions. Ex. 7. Thus, even though Defense counsel—who never represent that they speak Turkish or otherwise have expertise in the alteration of audio recordings—suggest, without explanation or details, their belief that "several of the recordings seem to cut out or in quickly, in the middle of a conversation," Mot. 8, this contention is completely at odds with the documents prepared by Defendants' own translator.[5]

In sum, Defendants' inability to even suggest where and how the audio recordings might have been altered demonstrates that their spoliation argument is baseless and should be rejected.

## II. EVEN IF EVIDENCE WAS SOMEHOW SPOLIATED, DEFENDANTS FAIL TO SHOW HOW IT IS EITHER RELEVANT OR PREJUDICIAL

The Court need not determine whether allegedly spoliated evidence is relevant or prejudicial because, as discussed above, Defendants clearly fail to meet their initial burden of

---

[4] Defendants also offer no explanation for why they waited nearly eight years, until the eve of trial, to bring this alleged spoliation to the Court's attention. *Senior v. Eihab Human Servs.*, 2023 U.S. Dist. LEXIS 78294, at *3 n.1 (E.D.N.Y. May 4, 2023) (denying part of a motion *in limine* by noting, "The eve of trial is not the time to resurrect discovery grievances. With no new facts in issue, the time for that is long gone.").

[5] Even if the audio did somehow cut out during relevant portions, Defendants can examine witnesses at trial on the allegedly missing context.

5

establishing spoliation of evidence in the first place. *La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74, 82 (S.D.N.Y. 2022) ("As a threshold matter, a party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed."); *Moody*, 271 F. Supp. 3d at 430 (finding that the moving party established prejudice by making "plausible, concrete suggestions as to what [the destroyed] evidence might have been"). Regardless, even assuming *arguendo* that relevant evidence did once exist, Defendants have not met their further burden of establishing that the allegedly spoliated evidence is either relevant or prejudicial. *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 783 F. Supp. 2d 736, 740 (S.D.N.Y. 2011) ("A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim [including that] the destroyed evidence was relevant to the party's claim or defense.") (citations and internal quotations omitted); *Moody*, 271 F. Supp. 3d at 429 ("[Spoliation] sanctions may be imposed where the loss of electronic information has prejudiced the moving party.").

Defendants must show that the allegedly spoliated evidence is relevant to their claim or defense "such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *see* Mot. 2-3 (citing the same). This requires that the allegedly destroyed evidence "would have been favorable" to the Defendants. *Keurig*, 341 F.R.D. at 497 (citation and internal quotations omitted); *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998) (noting that, even after a party arguing spoliation has shown the destruction of a relevant document, that party must "introduce[] some evidence tending to show that the document actually destroyed or withheld is the one as to whose contents it is desired to draw an inference") (citing 2 John H. Wigmore, *Evidence in Trials at Common Law* § 291, at 228). Additionally, since Defendants admit that Plaintiff's custom of getting a new phone every year was not intended to destroy evidence, (Mot. 4 & n.2), Defendants

6

have the further burden of establishing that the allegedly spoliated evidence is prejudicial. *See* Fed. R. Civ. P. 37(e) (requiring "prejudice to another party from loss of the [allegedly spoliated] information" where the producing party did not "act[] with the intent to deprive another party of the information's use in the litigation").[6]

Even in a hypothetical world where Plaintiff did spoliate evidence, that spoliation is neither relevant nor prejudicial because it would not support any of Defendants' claims or defenses. Plaintiff's claims to be tried are: (1) discrimination and a hostile work environment based on his race and national origin; (2) retaliation for his complaint about that discrimination and hostile work environment; and (3) assault the day he was fired. Defendants have provided no explanation of how the existence of other audio recordings might help defend against any of these claims. For instance, audio recordings of Defendants being either cordial or neutral with Plaintiff on some occasions would not negate that they discriminated against him in others. This is particularly salient given that Plaintiff's claim for discrimination and a hostile work environment can be based on "even a single comment" under the New York City standard. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013). Similarly, Defendants have not suggested how any additional audio recordings would disprove Plaintiff's claim that he was fired

---

[6] In their motion, Defendants suggest that they can seek sanctions for spoliation under Rule 37(b). *See* Mot. 2 (quoting sentence about Rule 37(b)). However, Rule 37(b) is limited to when a party acts in contravention of a clearly directed court order. *See, e.g., Oleg Cassini, Inc. v. Electrolux Home Prods., Inc.*, 2013 WL 3056805, at *3 (S.D.N.Y. June 19, 2013) ("'Provided that there is a clearly articulated order of the court requiring specific discovery,' Rule 37(b) of the Federal Rules of Civil Procedure gives district courts authority to impose sanctions for noncompliance with such an order.") (citation omitted); *Loc. 3621, EMS Officers Union, DD-37, AFSCME, AFL-CIO v. City of New York*, 2021 WL 134566, at *3 (S.D.N.Y. Jan. 14, 2021) ("'A court order directing compliance with discovery requests is a required predicate to Rule 37(b) sanctions.'") (citation and internal quotations omitted). Plaintiff is not aware of any order this Court has given regarding either the production of audio recordings or Plaintiff's phone generally, and Defendants do not identify any such order in their motion.

7

in retaliation for his complaint rather than a legitimate reason. Likewise, an audio recording would not exonerate Defendant Dogan of allegations that he assaulted Plaintiff by placing him in apprehension of imminent harmful or offensive contact, especially when the standard for assault ordinarily requires more than threatening words (the only thing to be picked up on audio). *Hurt v. City of New York*, 2019 WL 5781990, at *12 (S.D.N.Y. Nov. 6, 2019). Finally, Defendants do not proffer an explanation for how an audio recording would help them prove Defendant Dogan's counterclaim of an allegedly unrepaid loan.

At the end of the day, to establish a spoliation of evidence claim, as a case cited by Defendants states, "the loss of evidence ***must impede the moving party's ability to address issues in the case***." *Mathias v. Jacobs*, 197 F.R.D. 29, 39 (S.D.N.Y. 2000), *vacated*, 167 F. Supp. 2d 606 (S.D.N.Y. 2001) (emphasis added); *see* Mot. 2 (citing *Mathias*). Defendants have not shown such an impediment and thus have not met their burden of establishing the elements of their spoliation claim. *Accord GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 360 (S.D.N.Y. 2012) (denying spoliation sanctions because the party was not prejudiced), *aff'd*, 2012 WL 1849101 (S.D.N.Y. May 21, 2012).

## III. THE AUDIO RECORDINGS CAN BE PROPERLY AUTHENTICATED

Unable to show the existence of any spoliated evidence, or even how prejudice would result from hypothetically spoliated evidence, Defendants next try to exclude the damning audio recordings by claiming that they cannot be authenticated. Mot. 5-7. To make that stretched argument, Defendants hang their hat on an easily distinguishable and nonprecedential case: *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251 (S.D.N.Y. 2003).

If Defense counsel had taken the time to Shepardize *Penguin*, they would have realized that subsequent decisions made overwhelmingly clear that *Penguin* does not apply to the situation

8

at hand.  For instance, Defendants cite *Penguin* for the proposition that the authenticity of audio recordings is evaluated via a seven-point test and must be established by "clear and convincing evidence."  Mot. 5 (citing *Penguin*, 262 F. Supp. 2d at 263-64).  However, the court in *S.E.C. v. Badian* discusses *Penguin*, noting that a party who "urges that an audio recording's authenticity must be established by clear and convincing evidence, evaluated pursuant to a seven-factor rubric [] is mistaken."  822 F. Supp. 2d 352, 364 (S.D.N.Y. 2011), *amended on reconsideration in part*, 2012 WL 2354458 (S.D.N.Y. June 20, 2012).  *Badian* notes that *Penguin* was the only case which applied that standard to the civil context, when it instead belonged in the criminal context.  *Badian*, 822 F. Supp. 2d at 364.

*Badian*, relying on a decision by the Court of Appeals[7], further states that "the ultimate authentication issue is properly one for the jury so long as there is evidence sufficient to permit a rational juror to conclude that the statement was made by the party the proponent contends made it."  *Id.* (citation omitted).  The court noted that *Penguin* was easily distinguishable because in *Penguin* there was an "absence not only of evidence concerning the integrity of the tapes and transcripts in question, but also of the identity of the speakers and even of the relevance of the proffered statements."  *Id.*  Here, there is no question about the identity of the speakers or the relevance of the statements in the audio recordings.  In fact, Defendants themselves have offered transcripts admitting both.  Ex. 7.

Finally, a later decision by the court in *Badian* cited a separate Second Circuit case[8] and further clarified:  "The burden of authentication of an audio recording does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity. … Rather, the

---

[7] *Ricketts v. City of Hartford*, 74 F.3d 1397 (2d Cir. 1996), *as amended on reh'g in part*, (Feb. 14, 1996).

[8] *McLaurin v. New Rochelle Police Officers*, 439 F. App'x 38 (2d Cir. 2011).

9

standard for authentication, and hence for admissibility, is one of reasonable likelihood." 2012 WL 2354458 at *2 (citation and brackets omitted).  Therefore, "[q]uestions of reliability, including allegations of tampering," as Defendants raise here, "go to the weight of the evidence rather than its admissability [sic]." *Id.* (citation omitted).  For these reasons, Defendants' authenticity argument and allegations of tampering should be rejected.  Instead, the audio recordings (along with all other evidence derived from those recordings) should be deemed authentic and admissible.

## IV. THE AUDIO RECORDINGS SATISFY THE BEST EVIDENCE RULE

Even though Defendants claim prejudice over not having access to the "original recordings," Mot. 3, Defendants fail to explain how the produced audio recordings are not "original."[9]  Defendants also falsely assert that the audio recordings "were not preserved" when the audio recordings clearly exist and were produced to Defendants.  *Compare* Mot. 3 *with Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218-19 (S.D.N.Y. 2003) (noting that a party has "met its preservation obligations by preserving one copy of all relevant documents") *and* Fed. R. Civ. P. 37(e) Advisory Committee Note to 2015 Amendment ("Because [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere.").[10]  Defendants further fail to show any "portions of the recording that were

---

[9] Defendants state that an "original" is "any printout — or other output readable by sight — if it accurately reflects the information." Mot. 8 (citing Fed. R. Evid. 1001(d)). However, saying an audio recording is not "original" because it is not a "printout" is nonsensical. It also ignores the beginning of Rule 1001(d) which states, "An 'original' of a writing or recording means the writing or ***recording itself or any counterpart intended to have the same effect*** by the person who executed or issued it." Fed. R. Evid. 1001(d) (emphasis added). Defendants fail to explain how Plaintiff's produced audio recordings are not the recordings themselves or how they do not have the same effect as when they existed on his phone.

[10] The 2015 Amendment also removed the ability for a party to seek an adverse inference when spoliation (when found) was not intended to deprive another party of evidence, as Defendants admit. *See* Mot. 4 n.2; *see also* Fed. R. Civ. P. 37(e) Advisory Committee Note to 2015 Amendment.

cut off." *Compare* Mot. 3 *with supra* Section I.B (noting that Defendants' own translations suggest no missing context). Finally, Defendants' argument that the audio files "might have been clearer" on Plaintiff's phone, Mot. 3, is baseless, much less supported by any expert opinion.

But even if the audio recordings are deemed to be "duplicates" rather than "originals," which Defendants have not proven, they would still satisfy the best evidence rule. As Defendants admit, a "duplicate" is admissible "to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Defendants seem to argue that the best evidence rule is violated because the original audio recordings were not preserved and cannot be authenticated, thus it would be extremely unfair to allow a duplicate recording to be used in the original's place. Mot. 8. However, as discussed *supra* Section III, Defendants' authenticity argument is misplaced. Hence, they have not raised a "genuine question … about the original's authenticity." Fed. R. Evid. 1003. Having failed to do so, Defendants have no basis to argue that, even if the audio recordings were duplicates, the duplicates should not be admitted in the originals' place.

In short, because there is no genuine question about the authenticity of the audio recordings, it is not unfair to admit them as either originals or duplicates, and therefore, they satisfy the best evidence rule.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion *in limine* seeking to exclude the admission of recordings produced by Plaintiff, as well as exhibits derived from those recordings, should be denied in its entirety.

Dated: March 22, 2024　　　　　QUINN EMANUEL URQUHART &
　　　　　New York, New York　　　　SULLIVAN, LLP

　　　　　　　　　　　　　　　　　　By: */s/ Mark Fuchs*
　　　　　　　　　　　　　　　　　　　　Jacqueline Stykes
　　　　　　　　　　　　　　　　　　　　Mark Fuchs
　　　　　　　　　　　　　　　　　　　　Katherine Lemire
　　　　　　　　　　　　　　　　　　　　51 Madison Avenue, 22nd Floor
　　　　　　　　　　　　　　　　　　　　New York, New York 10010
　　　　　　　　　　　　　　　　　　　　jacquelinestykes@quinnemanuel.com
　　　　　　　　　　　　　　　　　　　　markfuchs@quinnemanuel.com
　　　　　　　　　　　　　　　　　　　　katherinelemire@quinnemanuel.com
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 849-7000

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff Mehmet Emin Tatas*