UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEHMET EMIN TATAS,

                Plaintiff,

– against –

ALI BABA'S TERRACE, INC., ALI RIZA DOGAN, SENOL BAKIR and TOLGAHAN SUBAKAN,

                Defendants.

**OPINION & ORDER**

19-cv-10595 (ER)

RAMOS, D.J.:

    Mehmet Emin Tatas brought this action against his former employer, the restaurant Ali Baba's Terrace, Inc. ("Ali Baba's"), the owner Ali Riza Dogan, and two former coworkers Senol Bakir and Tolgahan Subakan, alleging that he was subject to unlawful discrimination, retaliation, and a hostile work environment based on his race and national origin. Doc. 93. Tatas also alleged that Dogan assaulted him. *Id*. The case went to trial before a jury, which found in Tatas' favor solely as to his assault and battery claim against Dogan. Before the Court are the parties' cross-motions for costs. Docs. 245, 248. For the reasons set forth below, both requests for costs are GRANTED in part, subject to the Court's additional modifications.

**I.    BACKGROUND[1]**

    The Court assumes familiarity with the background of this case, which is described in detail in the Court's prior opinions. *See* Docs. 33, 122, 131. An abbreviated summary of relevant facts is included below.

---

[1] On May 16, 2017, Tatas filed a lawsuit in New York Supreme Court. Doc. 1-2 (the "2017 Complaint"). Tatas filed a second lawsuit in New York Supreme Court over two years later, on 2019. Doc. 1-1 (the "2019 Complaint."). The Defendants removed both lawsuits to this Court in November 2019. Doc. 1-1. The Court consolidated these two cases into one action on Defendants motion on December 17, 2019. Doc. 21.

### A. Factual Allegations

Tatas, a Kurdish man from Turkey, began to work for Ali Baba's as a waiter in November 2011. 2019 Compl. ¶ 7. His employment continued without incident until early 2016, when he allegedly told defendant Tolgahan Subakan—his coworker and then-roommate—about his Kurdish background. 2019 Compl. ¶ 17. Subakan allegedly told defendant Bakir about Tatas' Kurdish ancestry shortly thereafter. 2019 Compl. ¶ 17. According to Tatas, Subuakan and Bakir began calling him a terrorist and a member of the Kurdish Workers Party or "PKK," a political and paramilitary organization based in the Kurdish regions of Turkey and Iraq. 2019 Compl. ¶ 18. Tatas claims that he told Dogan, the owner of the restaurant, about the harassment, but that his co-workers behavior continued and that Dogan began to participate in the verbal harassment as well. 2019 Compl. ¶ 18.

Over the next several months, Tatas alleges the harassment continued. On May 27, 2016, Tatas alleges that Dogan fired him and also physically assaulted him by kicking him three times. 2019 Compl. ¶ 30.

### B. Procedural History

Tatas, initially proceeding *pro se*, filed this suit on May 16, 2017 in New York state court against Defendants. 2017 Compl. Defendants removed the case to this Court in November 2019. Tatas asserted, in part, discrimination, retaliation, and hostile work environment claims on the basis of race and national origin pursuant to 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, *et seq.* ("NYCHRL"). As noted above, he also asserted a claim for common law assault and battery against Dogan. *See* 2019 Compl.

On March 14, 2023, after over four years of discovery and motion practice before this Court, including motions to dismiss and for summary judgment, Defendants made an offer of judgment to Tatas pursuant to Federal Rule of Civil Procedure 68. Doc. 246-4.

The offer allowed Tatas to take judgment against Ali Baba's on behalf of all Defendants for $77,500, as well as costs, expenses, and reasonable attorney fees incurred through the date of the offer. *Id.* Tatas was required to accept the offer within 14 days in writing, otherwise, it was deemed to be withdrawn. *Id.* Tatas, at this point represented by *pro bono* counsel,[2] responded via email on the same day acknowledging receipt. Doc. 246-5. However, Tatas did not accept or otherwise respond to the offer within 14 days. Doc. 246 ¶ 7.

A jury trial was held approximately a year later from April 1, 2024 through April 9, 2024. Both sides presented witnesses, and the Defendants presented the following individuals: Mursel Yalbuzdag, a former waiter at Ali Baba's; Aysel Mansley, another Ali Baba's employee; and Yunus Hoscan, a chef at Ali Baba's. *See generally* Doc. 229. The jury found that Tatas did not prove, by a preponderance of the evidence, that he was subject to discrimination, retaliation, or a hostile work environment pursuant to § 1981, the NYSHRL, or the NYCHRL, and found in his favor only on his assault and battery claim against Dogan. *See* Doc. 237. On the assault and battery claim, which the jury found Tatas had proved by a preponderance of the evidence, the jury awarded him $2,500 in compensatory damages and $1 in nominal punitive damages. Doc. 219. The jury found in favor of Defendants on all other claims.

On May 3, 2024, Tatas' counsel moved to withdraw as his attorneys, citing an irrevocable breakdown of the attorney-client relationship. Doc. 223. The Court granted their motion on May 6, 2024. Doc. 228. On June 4, 2024, Tatas, now proceeding *pro se*, filed a notice of appeal from the judgment entered in the case.[3] Doc. 241. Approximately

---

[2] Laura Santos-Bishop, Jacqueline Stykes, Katherine Lemire, and Mark Fuchs of the law firm Quinn, Emanuel, Urquhart & Sullivan, entered appearances as *pro bono* counsel on behalf of Tatas in February 2023. Docs. 136, 137, 143, 155.

[3] Neither party contests the Court's subject matter jurisdiction to decide the motions for costs. Moreover, the Second Circuit has instructed that even after a court has concluded its adjudication of a case on the merits, it still "retains authority to take action with respect to some collateral matters related to the case,

3

one month later, Defendants moved pursuant to Rule 68 for their costs. Doc. 245.

Specifically, Defendants seek reimbursement for the following costs:

- $240 to subpoena Dr. Olivier Van Hauwermeiren to take his deposition on September 13, 2023 in anticipation of trial;[4]
- $1,605.05 for the transcript of the deposition of Dr. Van Hauwermeiren on September 13, 2023 in anticipation of trial;
- $15.75 to obtain updated medical records regarding Tatas from Advanced Neurology, in anticipation of trial;
- $6.75 to obtain updated medical records regarding Tatas from Mt. Sinai Doctors Long Island Five Towns, in anticipation of trial;
- $27 to obtain updated medical records regarding Tatas from Movement Concepts, in anticipation of trial;
- $668.50 to obtain updated medical records regarding Tatas from Nassau University Medical Center (where he received mental health treatment from, among others, Dr. Van Hauwermeiren), in anticipation of trial;
- $1,042 for interpreter services provided by Ebru Hoscan between March 26 and April 7, 2024 during preparation sessions with Defendants in anticipation of their trial testimony;
- $1,791.36 to subpoena third party witnesses Mursel Yalbuzdag, Aysel Mansley, and Yunus Hoscan to compel their appearance at trial;[5]
- $2,375 for interpreter services provided by George Esayan at trial;
- $2,100 for interpreter services provided by Cansu Kaptaner at trial;
- $1,150 for interpretation equipment provided by SKYDEA, LLC for use at trial;
- $5,080.30 for daily trial transcripts provided by Southern District Reports PC during trial;
- $633.20 for the round-trip flight of third-party witness Mursel Yalbuzdag between California (where he lives) and New York, for his subpoenaed testimony at trial;
- $125.73 for the round-trip car service of third-party witness Aysel Mansley for her subpoenaed testimony at trial;

---

such as attorney's fees and costs." *Covanta Onondaga Ltd. Partnership v. Onondaga County Resource Recovery Agency*, 318 F.3d 392, 396 (2d Cir. 2003).

[4] Tatas presented Dr. Van Hauwermeiren, his former therapist, as a witness during the trial.

[5] While Defendants refer to "subpoena and witness fees" in their motion, *see* Doc. 247 at 3, the attached exhibit only reflects the costs for a process server to serve these individuals. Doc. 246-13.

4

- ▪ $2,697.18 for attorney travel expenses by Defendants' counsel for preparation for and participation in trial;
- ▪ $279.32 in various trial-related shipping costs; and
- ▪ $1,204.90 for printing and photocopying of documents in anticipation of trial.

Doc. 247 at 4–5.  These expenses total $21,042.04.  *Id.* at 5.

On July 22, 2024, Tatas filed his own motion for costs pursuant to Rule 68.  Doc. 248.  As Defendants point out, since Tatas never made an offer of judgment, Rule 68 is inapplicable.  *See* Doc. 253 at 2.  However, in his brief, Tatas makes substantive arguments related to Rule 54(d), which allows prevailing parties to collect their costs.  *See, e.g.*, Doc. 250 at 9.  Given the leniency afforded *pro se* litigants, the Court construes Tatas' motion as filed pursuant to Rule 54(d).[6]  Tatas seeks a total of $25,833.75 in costs, which generally relate to interpreter services, printing and photocopying fees, PACER charges, and other clerical costs.  *See* Doc. 250 at 11–12.

## II.  LEGAL STANDARD

### A. Rule 68

Rule 68 provides in relevant part that:

> [A] party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued .... If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree *must* pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68(a), (d) (emphasis added).  "Rule 68 is a cost-shifting rule designed to encourage settlements without the burdens of additional litigation."  *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 229 (2d Cir. 2006).  "Rule 68's language is mandatory, stating that 'the offeree *must* pay the costs incurred.'"  *Holmes v. Apple, Inc.*, 2020 WL 1862571, at *2 (S.D.N.Y. Apr. 14, 2020) (quoting Fed. R. Civ. P. 68(d)) (emphasis in original).

---

[6] Defendants also argue that Tatas' motion is untimely because it was filed more than three months after the date by which the Court told the parties to file any post-trial motions.  Doc. 253 at 3.  Again, due to the leniency granted *pro se* litigants, the Court will treat his motion as timely-filed.

5

The Supreme Court has held that "all costs properly awardable in an action are to be considered within the scope of Rule 68 'costs.'" *Marek v. Chesny*, 473 U.S. 1, 9 (1985); *Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86, 89 (2d Cir. 2004) (same). Costs awardable under Rule 68 "should be based on 28 U.S.C. § 1920." *Hedru v. Metro-N. Commuter R.R.*, 433 F. Supp. 2d 358, 360 (S.D.N.Y. 2006). The statute includes the following fees:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under § 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.

28 U.S.C. § 1920. "Absent a contract or statute that authorizes a court to award additional costs to the prevailing party, only those costs that are set out in § 1920 are properly taxable." *Endo Pharmaceuticals, Inc. v. Amneal Pharmaceuticals, LLC*, 331 F.R.D. 575, 579 (S.D.N.Y. 2019) (citation omitted). The party seeking costs "bears the burden of establishing that each expense it seeks to recover falls within an allowable category of taxable costs." *Id*. at 578–79 (internal brackets, quotations, and citations omitted).

When interpreting and applying § 1920, the Supreme Court has explained that the statute "should be read as limiting taxable costs 'to relatively minor, incidental expenses,' such that 'the assessment of costs most often is merely a clerical matter that can be done by the court clerk.'" *Id.* at 580 (quoting *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 573 (2012)). "Those observations, though dicta, demonstrate the Supreme Court's reluctance to read Section 1920 broadly." *Id.* (internal brackets, quotations, and citations

omitted); *see generally Taniguchi*, 566 U.S. at 572–73 (referring to the "narrow scope of taxable costs" and rejecting "broadest possible reading of the costs enumerated in § 1920").

### B. Rule 54(d)

Rule 54(d) provides that litigation costs other than attorney fees "should be allowed to the prevailing party" in a suit. Fed. R. Civ. P. 54(d)(1). In considering a claim for costs under Rule 54(d), the court must first determine whether the party seeking an award is a "prevailing party." *Mr. L. v. Sloan*, 449 F.3d 405, 407 (2d Cir. 2006); *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 100–02 (2d Cir. 2006). Only then can the court exercise its discretion in determining whether the prevailing party is entitled to costs. *Mr. L.*, 449 F.3d at 407; *Dattner*, 458 F.3d at 100–02.

Local Civil Rule 54.1 "further outlines those costs which are taxable in the Southern District of New York." *Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n*, No. 14-cv-10116 (VSB), 2023 WL 5498928, at *1 (S.D.N.Y. Aug. 25, 2023). As relevant here, Local Rule 54.1 provides additional details on the categories listed in 28 U.S.C. § 1920, including trial and deposition transcripts, witness fees and travel expenses, interpreters, copies of exhibits and papers, and docket fees. *See* Local Rule 54.1.

### C. *Pro Se* Plaintiff

The Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09-cv-6621 (SAS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by pro se litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret

7

them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## III. DISCUSSION

### A. Defendants' Motion for Costs Pursuant to Rule 68

#### 1. Defendants are Entitled to Costs

As described above, Defendants seek reimbursement of $21,042.04 in costs incurred after the March 14, 2023 offer was made. Doc. 247 at 3–5. Tatas' primary argument in opposition is his claim that only a prevailing party can receive reimbursement for their costs, and that he—not Defendants—prevailed in this case. Doc. 250 at 10–11, 13–15. Tatas is incorrect. According to Rule 68, where "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree *must* pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d) (emphasis added). Since Tatas' ultimate recovery, $2,501, was substantially less favorable than Defendants' offer of $77,500, the plain language of Rule 68 requires Tatas to pay Defendants' post-offer costs. *See Stanczyk v. City of New York*, 752 F.3d 273, 281 (2d Cir. 2014) (holding that Rule 68 requires prevailing plaintiffs to pay *defendants'* post-offer costs, and noting that "every Circuit to have confronted this question appears to have reached the same conclusion") (emphasis added). Accordingly, Defendants are entitled to recover their post-offer costs, subject to the modifications described below.[7]

---

[7] Tatas also relies on *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981), to argue that Defendants costs are "squarely foreclosed" because the jury found in their favor on the discrimination, retaliation, and hostile work environment claims. Doc. 250 at 7. However, *Delta Air Lines* does not support his proposition. In that case, the Supreme Court held that Rule 68's mandatory cost-shifting provisions are not triggered if the plaintiff recovers nothing and there is a full defense verdict. *Id*. 347–48. As Justice Powell noted in his concurrence, the Court's holding implies that "a defendant may obtain costs under Rule 68 against a plaintiff who *prevails in part* but not against a plaintiff who *loses entirely*." *Id.* at 362 (Powell, J., concurring) (emphasis in original). Thus, awarding Defendants costs in the present litigation fully complies with *Delta Air Lines*.

8

2. *Modifications to Costs Reimbursable Pursuant to Rule 68*
    a. *Service of Subpoenas*

Defendants seek reimbursement of $2,031.36 in process server costs to serve four subpoenas.[8] *See* Doc. 247 at 3. The costs for private process servers are not enumerated in 28 U.S.C. § 1920, and the Second Circuit has recognized that "the plain language of § 1920 clearly does not authorize the shifting of private process fees." *U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 172 (2d Cir. 1996). Though a district court may award such fees, it is not mandated to do so, and parties may recover private process server costs "only to the extent that they do not exceed the costs" that the United States Marshals Service would have incurred to effect service.[9] *Id.* Accordingly, the Court will not award costs for the private process servers.

b. *Witness Travel Expenses*

Next, Defendants also submit the travel expenses of third-party witnesses who, after being subpoenaed, testified at trial. As explained above, Defendants seek $633.20 for the round-trip flight of third-party witness Mursel Yalbuzdag and $125.73 for the round-trip car service of third-party witness Aysel Mansley.[10] Doc. 247 at 4.

Witness travel fees are authorized pursuant to § 1920, but are limited by another statute, 28 U.S.C. § 1821. As relevant here, § 1821 provides:

> (c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from

---

[8] As described above, Defendants seek to be reimbursed $240 paid to a private process server to serve a subpoena to Dr. Olivier Van Hauwermeiren, Doc. 246-6, as well as $1,791.36 paid to a private process server to serve subpoenas to third-party witnesses Mursel Yalbuzdag, Aysel Mansley, and Yunus Hoscan. Doc. 246-13.

[9] The current rate for the United States Marshals to effect service is $65 per hour. 28 C.F.R. § 0.114. Defendants do not provide the number of hours spent for service of the subpoenas. Accordingly, the Court cannot calculate the appropriate costs on this basis.

[10] Defendants note that a car service was necessary for Ms. Mansley because she is an accountant, and her testimony occurred on April 8, 2024, one week before "tax day." As a result, Defendants argue that Ms. Mansley "needed to get back and forth from court as quickly as possible to be able to adequately service her clients before the tax deadline." Doc. 247. at 4 n.2.

> such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.
>
> (2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed … for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services.

As to Mr. Yalbuzdag, Defendants have provided supporting documentation of his $633.20 round-trip economy class flight from California, where he lives, to New York. Doc. 246-18. Accordingly, the requirements of § 1821(b) are satisfied, and the Court awards $633.20 in witness travel expenses. As to Ms. Mansley, Defendants do not attach supporting documentation that allows the Court to ascertain the total distance that she traveled, as required to calculate the travel allowance pursuant to § 1821(c)(2). Accordingly, the Court will not award costs for her travel expenses.

### B. Tatas' Motion for Costs Pursuant to Rule 68

In addition to opposing Defendants' motion, Tatas also requests $25,833.75 in costs, arguing that he was the prevailing party in his assault and battery claim against Dogan and is therefore entitled to costs pursuant to Federal Rule of Civil Procedure 54(d). Defendants argue that recovery for the majority of these costs is barred by Rule 68, since they were incurred after the offer of judgment. Doc. 253 at 4–5.

Defendants are correct. The Second Circuit has established that Rule 68 not only cancels the operation of Rule 54(d) … but also reverses it." *Stanczyk*, 752 F.3d 273, 281 (2d Cir. 2014). In other words, the rejection of a Rule 68 offer of judgment requires the plaintiff to pay the defendant's post offer costs, but also "curtails the ability of a prevailing plaintiff to recover its costs … incurred after the offer is made." *Mango v. Democracy Now! Productions, Inc.*, No. 18-cv-10588 (DLC), 2019 WL 3325842, at *3 (S.D.N.Y. July 24, 2019). Here, the majority of Tatas' alleged costs were incurred after

10

the Rule 68 offer was made on March 14, 2023. *See* Doc. 250 at 11–12; *see also* Pl's. Exs. 3, 4, 5 (portions), 6, 7, 10 (portions), 11, 12, 13, 14.

Tatas alleges $3,281.35 in costs that the Court can ascertain were incurred prior to March 14, 2023.[11] Defendants do not contest that Tatas is the prevailing party on the assault and battery claim against Dogan, but argue that the Court should use its discretion to deny him any costs, since he did not prevail on any of his statutory claims pursuant to § 1981, the NYSHRL or the NYCHRL. Doc. 253 at 9.

Courts have the discretion to award costs to a prevailing party pursuant to Rule 54(d). *Portillo v. Webb*, No. 16-cv-4731 (VEC) (GWG), 2024 WL 1621066, at *1 (S.D.N.Y. Apr. 15, 2024); *see also Jacquety v. Baptista*, 549 F. Supp. 3d 293, 296 (S.D.N.Y. 2021) ("Although the Court does not have discretion to award costs falling outside the [Rule 54(d)'s] enumerated categories, the Court may exercise its discretion to *not award* costs that fall within those categories.") (emphasis in original) (citation omitted).

The Court declines to exercise its discretion to further reduce Tatas' costs based on his limited success. Courts in this District routinely reduce attorney fees based on the prevailing party's partial success. *See, e.g.*, *Hardaway v. Ridgewood Corp.*, 706 F. Supp. 2d 436, 442 (S.D.N.Y. 2010) (reducing attorney fees by 25% "due to limited success"); *Green v. Torres*, 290 F. Supp. 2d 427, 431 (S.D.N.Y. 2003), *aff'd*, 361 F.3d 96 (2d Cir. 2004) (reducing attorney fees by 20% for the same). However, Defendants do not cite—nor is the Court aware of—any authority in this District allowing a similar reduction in

---

[11] The Court includes the following costs: $45 to serve Dogan, charged on July 6, 2017, Doc. 250 at 68; $164.85 in envelopes and other mail-related fees charged in October 2019, *id.* at 64–65; $2,930 for interpreter services invoiced in 2020 and 2021; *id.* at 20, 22–25; $82.70 in PACER fees invoiced on October 5, 2022, *id.* at 38; and $58.80 in PACER fees invoiced on January 1, 2023, *id.* at 37.

Tatas also claims he paid $6,150 for printing and photocopying throughout the life of the case, "from May 16, 2017 to forward." Doc. 250 at 12; *see also* Doc. 249 ¶ 15 (Tatas' Declaration). Because Tatas has not submitted supporting documentation showing what printing and photocopying expenses were incurred before March 14, 2024, the Court cannot award him these costs.

11

*costs* due to the prevailing party's partial success. Accordingly, the Court will award Tatas $3,281.35 in costs.[12]

## IV. CONCLUSION

For the foregoing reasons, Defendants' and Tatas' requests for costs are GRANTED, subject to the Court's modifications as discussed above. Defendants are awarded a total of $18,884.95 in costs.[13] Tatas is awarded a total of $3,281.35 in costs. The Clerk of Court is respectfully directed to terminate the motions, Docs. 245, 248.

It is SO ORDERED.

Dated:   October 10, 2024
         New York, New York

EDGARDO RAMOS, U.S.D.J.

---

[12] Tatas appears to request costs based on a discovery dispute that was addressed by the Court at a January 29, 2021 conference, at which the Court largely denied Tatas' request to compel the production of certain documents. *See* Doc. 250 at 12; *id.* at 84–101 (transcript of January 29, 2021 conference). Because this issue was fully resolved nearly three and a half years ago, the Court declines to use its discretion to grant costs.

[13] This figure represents the Defendants' total costs, $21,042.04, less the cost of Ms. Mansley's $125.73 car service and the $2,031.36 in process server costs.