UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEHMET EMIN TATAS,

                Plaintiff,

– against –

ALI BABA'S TERRACE, INC., ALI RIZA DOGAN, SENOL BAKIR, *and* TOLGAHAN SUBAKAN,

                Defendants.

**OPINION & ORDER**

19-cv-10595 (ER)

RAMOS, D.J.:

    Mehmet Emin Tatas brought this action against his former employer, the restaurant Ali Baba's Terrace, Inc. ("Ali Baba's"), its owner Ali Riza Dogan, and two former coworkers, Senol Bakir and Tolgahan Subakan, alleging that he was subject to unlawful discrimination, retaliation, and a hostile work environment based on his race and national origin. Tatas also alleged that Dogan assaulted him. The case went to trial before a jury, which found in Tatas' favor solely as to his assault and battery claim against Dogan. Before the Court is Tatas' motion for a stay of the execution of the judgment pending appeal. Doc. 261.[1] For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND[2]

    The Court assumes familiarity with the background of this case, which is described in detail in the Court's prior opinions. *See* Docs. 33, 122, 131, 255. An abbreviated summary of relevant facts is included below.

---

[1] Tatas also asks the Court to grant a stay of "the injunction" pending appeal. Doc. 261 at 4. However, there is no injunction in this matter.

[2] Tatas initially filed this lawsuit in New York Supreme Court on May 16, 2017. Doc. 1-2 (the "2017 Complaint"). Tatas filed a second lawsuit in New York Supreme Court over two years later, on 2019. Doc. 1-1 (the "2019 Complaint."). The Defendants removed both lawsuits to this Court in November 2019. Doc. 1-1. The Court consolidated these two cases on Defendants' motion on December 17, 2019. Doc. 21.

### A. Factual Allegations

Tatas, a Kurdish man from Turkey, began to work for Ali Baba's as a waiter in November 2011. 2019 Compl. ¶ 7. His employment continued without incident until early 2016, when he allegedly first told Subakan—his coworker and then-roommate—about his Kurdish background. 2019 Compl. ¶ 17. Subakan allegedly told Bakir about Tatas' Kurdish ancestry shortly thereafter. *Id.* According to Tatas, Subuakan and Bakir began calling him a terrorist and a member of the Kurdish Workers Party or "PKK," a political and paramilitary organization based in the Kurdish regions of Turkey and Iraq. 2019 Compl. ¶ 18. Tatas claims that he told Dogan, the owner of the restaurant, about the harassment, but that his co-workers' behavior continued and that Dogan began to participate in the verbal harassment as well. *Id.*

Over the next several months, Tatas alleges the harassment continued. On May 27, 2016, Tatas alleges that Dogan fired him and also physically assaulted him by kicking him three times. 2019 Compl. ¶ 30.

### B. Procedural History

Tatas, initially proceeding *pro se*, filed this suit on May 16, 2017 in New York state court against Defendants. 2017 Compl. Defendants removed the case to this Court in November 2019. Tatas asserted, in relevant part, discrimination, retaliation, and hostile work environment claims on the basis of race and national origin pursuant to 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, *et seq.* ("NYCHRL"). As noted above, he also asserted a claim for common law assault and battery against Dogan. *See* 2019 Compl.

On March 14, 2023, after over four years of discovery and motion practice, including motions to dismiss and for summary judgment, Defendants made an offer of judgment to Tatas pursuant to Federal Rule of Civil Procedure 68. Doc. 246-4. The offer allowed Tatas to take judgment against Ali Baba's on behalf of all Defendants for

$77,500, as well as costs, expenses, and reasonable attorney fees incurred through the date of the offer. *Id.* Tatas was required to accept the offer within 14 days in writing, otherwise, it was deemed to be withdrawn. *Id.* Tatas, at this point represented by *pro bono* counsel,[3] responded via email on the same day acknowledging receipt. Doc. 246-5. However, Tatas did not accept or otherwise respond to the offer within 14 days. Doc. 246 ¶ 7.

A jury trial was held approximately a year later from April 1 through April 9, 2024. The jury found that Tatas did not prove, by a preponderance of the evidence, that he was subject to discrimination, retaliation, or a hostile work environment pursuant to § 1981, the NYSHRL, or the NYCHRL, and found in his favor only on his assault and battery claim against Dogan. *See* Doc. 237. On the assault and battery claim, the jury awarded Tatas $2,500 in compensatory damages and $1 in nominal punitive damages. Doc. 219.

On May 3, 2024, Tatas' counsel moved to withdraw as his attorneys, citing an irrevocable breakdown of the attorney-client relationship. Doc. 223. The Court granted their motion on May 6, 2024. Doc. 228. On June 4, 2024, Tatas, again proceeding *pro se*, filed a notice of appeal from the judgment entered in the case. Doc. 241.

Approximately one month later, on July 8, 2024, Defendants moved pursuant to Rule 68[4] for their costs, seeking a total of $21,024.05. Docs. 245, 247.

On July 22, 2024, Tatas filed his own motion for costs pursuant to Rule 68, seeking a total of $25,833.75 in costs. Docs. 248, Doc. 250. However, Rule 68 is inapplicable because a plaintiff cannot make a Rule 68 offer. *See* Fed. R. Civ. P. 68.

---

[3] Laura Santos-Bishop, Jacqueline Stykes, Katherine Lemire, and Mark Fuchs of the law firm Quinn, Emanuel, Urquhart & Sullivan, entered appearances as *pro bono* counsel on behalf of Tatas in February 2023. Docs. 136, 137, 143, 155.

[4] According to Rule 68, where "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree *must* pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d) (emphasis added). Defendants moved for costs pursuant to Rule 68 because Tatas' ultimate recovery, $2,501, was substantially less favorable than Defendants' offer of $77,500. Doc. 255 at 8.

Given the leniency afforded to *pro se* litigants, the Court construed Tatas' motion as filed pursuant to Rule 54(d). Doc. 255.

The Court granted Defendants' and Tatas' requests for costs, subject to the Court's modifications. *Id.* at 12. Defendants were awarded a total of $18,884.95, and Tatas was awarded a total of $3,281.35. *Id.* Tatas has not paid the judgment or provided a supersedeas bond. *See* Docs. 261, 264.

On March 13, 2025, Tatas filed the instant motion for a stay of the execution of the judgment pursuant to Rule 68 pending the outcome of his appeal. Doc. 261. However, motions to stay are governed by Rule 62, and Rule 62(b) specifically applies to stays of money judgments. Tatas also used the traditional stay test standard[5] to argue for a stay of the execution of the judgment. However, the traditional stay test "appl[ies] only when the judgment sought to be stayed is for injunctive or equitable relief," which is not the case here. *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 649 (S.D.N.Y. 2018) (citing *Moore v. Navillus Tile, Inc.*, No. 14-cv-8326, 2017 WL 4326537, at *4 (S.D.N.Y. Sept. 28, 2017)). Accordingly, because Tatas is proceeding *pro se*, the Court construes his motion as filed pursuant to Federal Rule 62(b) and applies the standard used for a stay of a money judgment.

## II.   LEGAL STANDARD

### A. Rule 62(b)

A party moving for a stay of the execution of a judgment pending appeal must do so pursuant to Rule 62 of the Federal Rules of Civil Procedure. "Rule 62, read in its entirety, reflects the federal policy of providing a judgment creditor with security during

---

[5] Under the traditional stay test, a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see New York v. United States Department of Homeland Security*, 974 F.3d 210, 214 (2d Cir. 2020).

4

the pendency of an appeal." *FDIC v. Ann-High Associates*, No. 97-6095, 1997 WL 1877195, at *2 (2d Cir. Dec. 2, 1997).

Rule 62(b) applies only to stays of money judgments. *Gulino v. Board of Education of City School District of City of New York*, No. 96-cv-8414 (KMW), 2019 WL 2454094, at *1 (S.D.N.Y. June 12, 2019) (citing *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 186, 188 (S.D.N.Y. 2007)). Under Rule 62(b) of the Federal Rules of Civil Procedure, "a party may obtain a stay [of execution of a judgment] by providing a bond or other security" at "any time after judgment is entered." Fed. R. Civ. P. 62(b). The stay "takes effect when the [C]ourt approves the bond or other security." *Id.* That is to say, the appellant is entitled to a stay as a matter of right upon receiving judicial approval of the bond. *See Georgiev v. ADSAD, LLC*, No. 19-cv-122, 2021 WL 3159853, at *1 (S.D.N.Y. June 21, 2021) (citing *Cohen v. Metropolitan Life Insurance Co.*, 334 F. App'x 375, 378 (2d Cir. 2009)). The Second Circuit has explained that the "purpose of [Rule 62(b)] is to ensure 'that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed.'" *In re Nassau County Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015) (citation omitted).

A district court may determine, in its discretion, that waiver of the supersedeas bond required under Rule 62(b) is appropriate where a judgment debtor provides an "alternative means of securing the judgment." *Id.* (quoting *FDIC*, 1997 WL 18877195, at *1).[6] In determining whether to grant a waiver, district courts in this Circuit apply the following "non-exclusive" *Nassau* factors:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of

---

[6] Tatas has not requested a waiver. *See* Doc. 261.

5

> money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Id.* at 417–18 (citation omitted). The *Nassau* factors are designed to accomplish the "primary purpose" of Rule 62(b): "to ensure recovery for a party who ultimately prevails on appeal, and to protect the judgment debtor from the risk of losing the money if the decision is reversed." *Id.* at 418. These factors "'contemplate waiving the requirement of a supersedeas bond because a court is satisfied that the debtor would be able to pay the judgment with ease.'" *John Wiley & Sons*, 327 F. Supp. 3d at 649 (citation omitted). "The vast majority of courts in this district applying [the *Nassau*] factors have denied a motion to stay enforcement without a supersedeas bond." *Penzo v. Consolidated Edison Co. of New York, Inc.*, No. 19-cv-07478 (MKV), 2025 WL 369708, at *3 (S.D.N.Y. Feb. 3, 2025) (listing cases).

### B. *Pro Se* Plaintiff

The Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Department of Education*, No. 09-cv-6621 (SAS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

### III. DISCUSSION

Tatas bases his argument on the traditional four-factor stay test, which is inapplicable to a stay of the execution of a judgment pending appeal, arguing that (1) his appeal is likely to succeed on the merits, (2) he will be irreparably harmed because he "will be forced to expend significant funds to cover [the money judgment], potentially hindering [his] ability to effectively pursue [his] appeal," (3) Defendants "will not suffer any material harm," and (4) "a stay is in the public interest." Doc. 261 at 2–3. However, as Defendants note, "when determining whether to grant a stay of a monetary judgment, as opposed to a stay of injunctive or equitable relief, the Second Circuit has rejected application of the traditional four-factor test in favor of [the *Nassau* factors] to determine whether a party may avoid posting a bond or other security." Doc. 264 at 2. Defendants argue that applying the *Nassau* factors, "there is no basis to waive the requirement that [Tatas] post a bond for the full amount of what he owes Defendants if he wants to avoid paying his obligation at this time." *Id.* at 3.

Tatas has not provided a supersedeas bond or suggested an acceptable alternative means of securing the judgment. The *Nassau* "factors contemplate waiving the requirement of a supersedeas bond because a court is satisfied that the debtor would be able to pay the judgment with ease." *Butler v. Ross*, No. 16-cv-1282 (DLC), 2017 WL 6210843, at *3 (S.D.N.Y. Dec. 7, 2017) (emphasis omitted). Here, Tatas has not "has not demonstrated that he has the appropriate funds available for the purposes of paying the judgment without delay or difficulty." *Id.* In fact, Defendants note that Tatas has repeatedly represented "that he is not in a good financial position" and that "when he filed his appeal … in June 2024 [and] applied to proceed *in forma pauperis*, [] Tatas represented that he and his spouse had a total monthly income of $1,100 and a single bank account with $3,000, as compared with total monthly expenses of $7,000 – and he indicated he did not expect any major changes in income, expenses, or assets for the next

year." Doc. 264 at 3–4; Doc. 264-4.[7]  Additionally, although the fifth *Nassau* Country factor "considers a debtor's 'precarious financial situation,' it does so in the context of considering prejudice to other creditors who may have claims to the debtor's property." *Butler*, 2017 WL 6210843, at *3 (emphasis omitted).  Here, Tatas has "presented no evidence or argument that posting a bond would make him unable to pay other creditors." *Sire Spirits, LLC v. Green*, No. 21-cv-7343 (JPC), 2023 WL 1516574, at *2 (S.D.N.Y. Feb. 3, 2023).

Tatas also argues that final judgment has not been entered because his appeal process is ongoing.  Doc. 261 at 2.[8]  Tatas further argues that "an appeal automatically stays the judgment, meaning the judgment is not final until the appeal is resolved." *Id.*[9]  Defendants note that Fed. R. Civ. P. 54 "defines a 'judgment' as 'any order from which an appeal lies" and that the Court's opinion and order dated October 10, 2024 awarding costs constitutes a judgment.

The Court's opinion and order dated October 10, 2024 awarding costs constitutes a judgment.  In addition, based on the case law discussed, it is clear that an appeal does

---

[7] Defendants note that "[t]he Second Circuit denied the motion as moot because [Tatas] already had paid the appeal docketing fee."  Doc. 264 at 4 n.2.

[8] Tatas cites to three cases to support this argument.  Doc. 261 at 2.  One of the cases is *Stanczyk v. City of New York*, 752 F. 3d 273, 280 (2d Cir. 2014).  The other two cases he references are supposedly U.S. Supreme Court cases, which he simply cites as (1) *Marek v. Chesny* (1985), and (2) *Walker v. City of New York* (1992).  Although Tatas did not provide a full citation for the *Marek* case, the Court assumes that the case is *Marek v. Chesny*, 473 U.S. 1 (1985).  Neither *Stanczyk* or *Marek* support Tatas' argument that final judgment is not entered if a plaintiff's appeal process is ongoing and instead discuss the scope of Rule 68. *See* Doc. 264 at 5; *Stanczyk*, 752 F. 3d at 280; *Marek*, 473 U.S. at 5.

Like Defendants, the Court was also unable to find *Walker v. City of New York* referenced by Tatas.  The Court did find a *Walker v. City of New York* opinion issued in 1992 by the Second Circuit. *See Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992).  However, that *Walker* case discusses whether the district court erred in dismissing the plaintiff's complaint, which is not relevant to the instant motion. *See id*.

[9] Tatas cites to two cases to support this argument, *In re AIG, Inc. Securities Litigation*, 588 F. Supp. 2d 346 (S.D.N.Y. 2008), and *Pepsico, Inc. v. McColo LLC*, 618 F.3d 116 (2d Cir. 2010).  Doc. 261 at 2.  However, as Defendants note, these cases do not appear at the citations offered.  Doc. 264 at 5 n.5.

not automatically stay a judgment. The Court also notes that the cases cited by Tatas to support his arguments either do not appear to exist or do not support his arguments.

## IV.   CONCLUSION

For the foregoing reasons, Tatas' motion for stay is DENIED unless Tatas posts a supersedeas bond by April 30, 2025.[10] The Clerk of Court is respectfully directed to terminate the motion, Doc. 261.

It is SO ORDERED.

Dated:   April 22, 2025
         New York, New York

                                              _____
                                              EDGARDO RAMOS, U.S.D.J.

---

[10] Defendants note that if Tatas "posts a supersedeas bond for the full amount plus any additional required expenses (e.g., post-judgment interest), Defendants will be satisfied and will not require immediate payment." Doc. 264 at 3 n.1.

9